UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

GERALD CONLEY,                          )
                                        )
        *Plaintiff*,                    )
                                        )       No. 1:20-cv-02572-JMS-MPB
        *vs.*                           )
                                        )
WINDOWS, LLC OF INDIANA A/K/A           )
WINDOWS, LLC or RENEWAL BY ANDERSEN     )
OF INDIANA; and RENEWAL BY ANDERSEN,    )
LLC,                                    )
                                        )
        *Defendants*.                   )

## **ORDER**

Plaintiff Gerald Conley was a Marketing/Revisit Manager at Defendant Windows, LLC of Indiana (also known as Windows, LLC or Renewal by Andersen of Indiana) ("Windows") from June 2017 to October 2018.  After his infant daughter was diagnosed with a health issue, Mr. Conley alleges that he was not offered or provided leave under the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA").  He initiated this litigation, asserting claims for FMLA interference against Windows and Defendant Renewal by Andersen, LLC ("Andersen").  Windows has filed a Motion to Dismiss, arguing that Mr. Conley is barred from bringing his FMLA claims in this lawsuit because he did not raise those claims in a previous lawsuit he filed against Windows for race discrimination and retaliation under Title VII of the Civil Rights Act of 1964.  The Motion to Dismiss, [Filing No. 11], is now ripe for the Court's consideration.

## I.
### STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting Fed. R. Civ. Pro. 8(a)(2)). "Specific facts are not necessary, the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).

A motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *See Active Disposal, Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* When a plaintiff "pleads himself out of court by making allegations sufficient to defeat the suit," dismissal under Rule 12 is appropriate. *Vincent v. City Colleges of Chicago*, 485 F.3d 919, 924 (7th Cir. 2007).

## II.
### BACKGROUND

The following factual allegations are taken from the Complaint, [Filing No. 1], and from the filings in another case Mr. Conley initiated in this Court, *Conley v. Windows, LLC of Indiana*,

1:19-cv-3164-JMS-MPB ("*Conley I*").[1]  The allegations in Mr. Conley's Complaint in this case ("*Conley II*") are accepted as true solely for the purpose of this Order.

### A.    Mr. Conley's Employment at Windows

Mr. Conley worked for Windows in sales and as a Marketing/Revisit Manager between June 2017 and October 2018.  [Filing No. 1 at 2.]  During that time, Mr. Conley was also jointly employed by, and subject to the control of, Andersen.  [Filing No. 1 at 2.]

Mr. Conley's daughter was born on June 19, 2018 and, at that time, Mr. Conley had worked for Defendants for more than one year, had worked more than 1,500 hours in the preceding year, and was eligible to take FMLA leave over the next twelve months in connection with his daughter's birth and for bonding purposes.  [Filing No. 1 at 2-3.]  After her birth, Mr. Conley's daughter was diagnosed with a kidney issue and, on September 26, 2018, she had an examination and ultrasound that led to additional diagnoses.  [Filing No. 1 at 3.]

On October 1, 2018, Mr. Conley received one quarter of an "attendance point" for being one minute late to work at Windows.  [Filing No. 1 at 3.]  On October 2 and 3, 2018, Mr. Conley's daughter was admitted to the hospital for evaluation, care, treatment, and surgery.  [Filing No. 1 at 3.]  At that time, Mr. Conley was eligible for FMLA leave in connection with his daughter's inpatient hospital care, treatment, serious health conditions, and her birth, and for bonding purposes.  [Filing No. 1 at 3.]  Mr. Conley was absent from work on October 2, 2018 due to his daughter's inpatient care and treatment at the hospital, and was given an unpaid leave day that was "approved/waived" by his supervisor, Laurin Wright, and Windows' Human Resources Officer. [Filing No. 1 at 3.]  But Mr. Conley was not offered or provided with FMLA leave in connection

---

[1] The Court may take judicial notice of the filings in *Conley I.  See Matthews v. Capital One Bank*, 2008 WL 4724277, at *2 (S.D. Ind. 2008) ("[A] district court can 'take judicial notice of matters of public record without converting a [motion to dismiss] into a motion for summary judgment'").

with his October 2, 2018 absence and instead could only use unpaid leave, even though Ms. Wright knew or "had probable cause to know" that he was absent from work that day in connection with his daughter's inpatient care and treatment and her serious health conditions. [Filing No. 1 at 3-4.]

Mr. Conley's daughter had surgery on October 3, 2018, and Mr. Conley again received one quarter of an "attendance point" for being one minute late to work. [Filing No. 1 at 4.] Mr. Conley was not offered or provided with FMLA leave in connection with the October 3, 2018 attendance discipline even though Ms. Wright knew or "had probable cause to know" that he had been absent from work on October 2, 2018 in connection with his daughter's inpatient care and treatment and her serious health condition, and that he was eligible to take FMLA leave in connection with his daughter's birth and for bonding purposes. [Filing No. 1 at 4.]

After the October 3, 2018 surgery, Mr. Conley needed to be absent from work to help care for his daughter and also wanted to take leave in connection with his daughter's birth and to bond with her. [Filing No. 1 at 4.] On October 4, 2018, Mr. Conley requested a leave from work until November 20, 2018. [Filing No. 1 at 4.] At that time, Ms. Wright and Mr. Conley's other supervisors knew or "had probable cause to know" that he needed to be absent from work to care for his daughter's serious health condition, and that he was eligible to take FMLA leave in connection with his daughter's birth and for bonding purposes. [Filing No. 1 at 4-5.] However, Mr. Conley was not offered or provided with FMLA leave in connection with his October 4, 2018 leave request. [Filing No. 1 at 5.]

After submitting his October 4, 2018 leave request, Ms. Wright informed Mr. Conley that someone above her would need to review the request. [Filing No. 1 at 5.] Mr. Conley advised Ms. Wright that he would "provide any further explanation of his leave request with whomever

before a final determination was made on his leave request." [Filing No. 1 at 5.] Neither Ms. Wright nor any other supervisor followed up with Mr. Conley to inquire about his leave request or the reason he was requesting leave. [Filing No. 1 at 5.] Ms. Wright instead advised Mr. Conley that she had consulted with Windows' Vice President, Steve Woodward, and Owner, Steve Davidson, and that they had approved his leave request but that his position would have to be filled during his leave and the position may not be available upon his return from leave. [Filing No. 1 at 5.] Mr. Conley questioned Ms. Wright regarding "why he did not have the certainty of a job return upon his return from leave," and advised her that he was not resigning. [Filing No. 1 at 5.] None of Mr. Conley's supervisors, including Ms. Wright or Mr. Woodward, responded to Mr. Conley's inquiry. [Filing No. 1 at 5.]

Mr. Conley began his leave on October 5, 2018. [Filing No. 1 at 5.] He was not offered or provided with FMLA leave in connection with his October 4, 2018 leave request and his leave beginning October 5 was not treated as FMLA leave even though he was eligible to take FMLA leave to care for his daughter's serious health condition, for her birth, and for bonding purposes. [Filing No. 1 at 6.] He was not offered or provided with FMLA leave even though Ms. Wright, Mr. Woodward, and/or Mr. Davidson knew or "had probable cause to know" that Mr. Conley was requesting FMLA leave to care for his daughter's serious health condition and/or for her birth and bonding purposes. [Filing No. 1 at 6.]

Mr. Conley was terminated on October 25, 2018. [Filing No. 1 at 6.] His termination report states that he "was granted unpaid leave until November 20, 2018, but that he was informed that his position may not be available upon his return from leave," and that his position was filled and there was not an open position available for him. [Filing No. 1 at 6.] Ms. Wright contends that she left a voicemail for Mr. Conley to advise him of his termination, but Mr. Conley did not

learn of his termination until November 20, 2018, when he attempted to return to work.  [Filing No. 1 at 6.]

**B.**   *Conley I*

On July 29, 2019, Mr. Conley filed *Conley I*, in which he alleged claims against Windows[2] for race discrimination under Title VII and 42 U.S.C. § 1981 and retaliation under Title VII related to his employment at Windows and his subsequent termination.  [Filing No. 1 in *Conley I*.]  On April 13, 2021, the Court granted in part Windows' Motion for Summary Judgment in *Conley I* as to Mr. Conley's Title VII and § 1981 race discrimination claims based on certain theories, but denied the motion in part as to his Title VII and § 1981 race discrimination claims based on discipline for attendance issues.  [Filing No. 66 at 38 in *Conley I*.]  As to that remaining claim, the Court ordered Mr. Conley to show cause why it should not enter summary judgment in favor of Windows because Mr. Conley did not suffer an adverse employment action.  [Filing No. 66 at 38 in *Conley I*.]  After considering Mr. Conley's response to the Order to Show Cause, the Court entered summary judgment in favor of Windows on the remaining claim, [Filing No. 71 in *Conley I*], and entered final judgment in the case, [Filing No. 72 in *Conley I*].

**C.**   *Conley II*

Meanwhile, Mr. Conley initiated this litigation on October 3, 2020, just a few weeks before Windows filed its Motion for Summary Judgment in *Conley I*.  [Filing No. 1; Filing No. 49 in

---

[2] Following the parties' lead, the Court referred to Windows as "Davidson Group" in *Conley I*.  The entity Windows in this case is the same entity as Davidson Group in *Conley I*.

*Conley I*.]  In this case, Mr. Conley sets forth claims for FMLA interference against both Windows and Andersen.[3]  [Filing No. 1 at 6-11.]

### III.
#### DISCUSSION

In its Motion to Dismiss, Windows argues that Mr. Conley impermissibly split his claims between *Conley I* and *Conley II*.  [Filing No. 12 at 5.]  It asserts that Mr. Conley "made the tactical decision not to pursue FMLA claims against Windows when he filed *Conley I* in 2019," and decided "not to amend the pleadings to include FMLA claims in *Conley I*, and [to] let discovery end without investigating potential FMLA theories."  [Filing No. 12 at 5.]  Windows argues that the discrimination and retaliation claims in *Conley I* were based on Windows' enforcement of its attendance policy and Mr. Conley's termination while on a personal leave of absence, and his FMLA interference claim in this case is based on the same facts.  [Filing No. 12 at 6-7.]  It notes "[q]uite simply, without the facts upon which Conley I is based, Mr. Conley would have no foundation for his FMLA claims in Conley II.  It is hard to imagine a more perfect example of the 'same transaction or occurrence' needed for the first element of claim splitting."  [Filing No. 12 at 7.]  Windows contends that *Conley I* and *Conley II* involve the same parties.  [Filing No. 12 at 8.]  Windows also argues that there need not be a final judgment in *Conley I* for claim splitting to apply.  [Filing No. 12 at 8-10.]  Finally, Windows asserts that *Conley I* and *Conley II* are "duplicative, parallel actions," and that the Court should dismiss *Conley II* because it is "a waste of judicial resources and an improper attempt at double recovery, warranting dismissal."  [Filing No. 12 at 11.]

---

[3] Andersen has not answered or otherwise pled to the Complaint, nor has counsel entered an appearance on its behalf.

In his response, Mr. Conley argues that claim splitting is part of the doctrine of res judicata, and that there must be a final judgment on the merits in *Conley I* before claim splitting can apply to preclude a second lawsuit. [Filing No. 15 at 6-9.] He asserts that a case relied upon by Windows – *Rexing Quality Eggs v. Rembrandt Enterprises, Inc.*, 953 F.3d 998 (7th Cir. 2020) – is inapposite because the Court had diversity jurisdiction in that case and applied Indiana common law regarding the doctrine of claim splitting. [Filing No. 15 at 10-11.] Mr. Conley also attempts to distinguish other cases relied upon by Windows, arguing that they either "reiterate that claim splitting is viewed through the *res judicata* prism and can only be dismissed if there is a final judgment on the merits or do not constitute binding precedent that establishes that this action should be dismissed on claim splitting grounds." [Filing No. 15 at 12-17.] Additionally, Mr. Conley argues that, in any event, his two cases do not involve the same transaction or operative facts. [Filing No. 15 at 17-19.] Specifically, he notes that "[t]he gist of [his race discrimination and retaliation claims] is that [he] experienced racial discrimination with respect to wages and commissions that he was owed and that, after complaining about these issues, he was retaliated and discriminated against, including through discipline," whereas his FMLA claims "relate to the failure of [Windows] to provide him FMLA leave in connection with his October 4, 2018 leave request and its failure to return him to his former position or a substantially equivalent position upon his return from leave." [Filing No. 15 at 18.] Mr. Conley contends that "the only overlapping fact between the claims is that [he] was terminated." [Filing No. 15 at 18.] He argues further that his case should not be dismissed for reasons of wise judicial administration because Mr. Conley sets forth different claims in this matter, the relief he seeks in the two cases is different, this lawsuit was timely filed and was not an attempt to avoid the statute of limitations, and he could be prejudiced

if this case is dismissed as duplicative because he will not be able to pursue his FMLA claims.

[Filing No. 15 at 19-22.]

In its reply, Windows argues that claim splitting is a procedural rule that is different than the doctrine of res judicata, and that it does not require a determination on the merits in the earlier lawsuit.  [Filing No. 16 at 3-11.]  It reiterates its arguments that *Conley II* is based on the same facts as *Conley I*, and that "reasons of wise judicial economy" provide another ground for dismissal.  [Filing No. 16 at 11-14.]

Mr. Conley focuses primarily on why the doctrine of res judicata, or claim preclusion, does not apply to bar his claims in this case, but the Court reads Windows' motion to be based upon the notion of impermissible claim splitting.  Another Court within this District has summarized the doctrine prohibiting claim splitting as follows:

> The doctrine of claim-splitting precludes a plaintiff from alleging claims that arise from the same transaction or events that underlie claims brought in a previous lawsuit.  In this sense, the rule against claim splitting is based on the same principles as res judicata and bars not only those issues that were actually decided in a prior lawsuit, but also all issues which could have been raised in that action.  *Barr v. Bd. of Trustees of W. Ill. Univ.*, 796 F.3d 837, 839 (7th Cir. 2015); *see also Palka v. City of Chicago*, 662 F.3d 428, 437 (7th Cir. 2011) ("This case is a quintessential example of claim splitting in duplicative lawsuits, a litigation tactic that [the] res judicata doctrine is meant to prevent"); *Wilson v. City of Chicago*, 120 F.3d 681, 687 (7th Cir. 1997) ("Two claims arising from the same facts are one claim for res judicata purposes, and may not be split…by making each claim the subject of a separate suit…").  Unlike traditional claim preclusion, however, the bar against claim splitting can be applied before either action reaches a final judgment on the merits.
>
> The doctrines of claim splitting and res judicata promote judicial economy and shield parties from duplicative litigation.  *Katz v. Gerardi*, 655 F.3d 1212, 1218 (10th Cir. 2011).  "But claim splitting is more concerned with the district court's comprehensive management of its docket, whereas res judicata focuses on protecting the finality of judgments." *Id.* (citing Wright & Miller, 18A FEDERAL PRACTICE AND PROCEDURE § 4406).
>
> As alluded to above, "the test for claim splitting is not whether there is finality of judgment, but whether the first suit, assuming it were final, would preclude the

second suit." *Id.* Claim splitting therefore applies if: (1) the second claim is based on the same transaction or occurrence as the first claim and there is (2) an identity of parties or their privies. In determining whether the parties have privity, the court looks to whether the parties share an identity of interest in the subject matter of the litigation. *Huon v. Johnson & Bell, Ltd.*, 757 F.3d 556, 559 (7th Cir. 2014).

*Telamon Corp. v. Charter Oak Fire Ins. Co.*, 2016 WL 67297, at *2 (S.D. Ind. 2016), *aff'd*, 850 F.3d 866 (7th Cir. 2017) (certain citations omitted).

In short, the doctrine of claim splitting "prohibits a plaintiff from bringing a new case raising issues arising out of the same transaction or occurrence as an earlier case, when those issues could have been raised in the first litigation." *Hobbs v. Dart*, 2021 WL 1906465, at *3 (N.D. Ill. 2021); *see also Shaver v. F.W. Woolworth Co.*, 840 F.2d 1361, 1365 (7th Cir. 1988) ("[T]he federal definition of a cause of action, when combined with the rule against claim-splitting, requires that a plaintiff allege in one proceeding all claims for relief arising out of a single core of operative facts, or be precluded from pursuing those claims in the future"). Unlike traditional claim preclusion, the bar against claim splitting can be applied before either action reaches a final judgment on the merits. *McCray v. Wilkie*, 2021 WL 977168, at *6 (E.D. Wis. 2021) ("Claim splitting…applies when the first two elements of claim preclusion are present but final judgment has not yet been entered in the first suit") (quotation and citation omitted).

Mr. Conley asserts that his claims in *Conley I* were based on "actions that began in…or around February 2018 and occurred long before his October 2018 termination," and relate to his belief that he "experienced racial discrimination with respect to wages and commissions that he was owed and that, after complaining about these issues, he was retaliated and discriminated against, including through discipline." [Filing No. 15 at 18.] He argues that, conversely, his claims in this litigation relate to "the failure of [Windows] to provide him [with] FMLA leave in connection with his October 4, 2018 leave request and its failure to return him to his former

position or a substantially equivalent position upon his return from leave." [Filing No. 15 at 18.] But Mr. Conley's argument misses the mark. Both *Conley I* and *Conley II* deal with the same general facts – Mr. Conley's employment with Windows and his subsequent termination. And while the specific facts underlying his claims in *Conley I* may be broader than those which underlie this litigation, there is a clear overlap as shown in the following table:

| Facts Underlying *Conley I* | Facts Underlying *Conley II* |
|---|---|
| Mr. Conley was disciplined for attendance issues that took place from July 31, 2018 to October 3, 2018. [Filing No. 66 at 16 in *Conley I*.] | Mr. Conley was disciplined for being tardy on October 1, 2018 and October 3, 2018. [Filing No. 1 at 3-4.] |
| On October 4, 2018, Mr. Conley requested paid time off from October 5, 2018 to November 1, 2018. His request was denied because he only had 2 hours and 19 minutes of paid time off available. He then changed his request to one for unpaid leave, and changed the dates of leave from October 5, 2018 to November 20, 2018, and that request was granted. [Filing No. 66 at 17-18 in *Conley I*.] | Mr. Conley requested leave on October 4, 2018, to last until November 20, 2018. His request for unpaid leave was eventually granted. [Filing No. 1 at 4-5.] |
| Ms. Wright informed Mr. Conley that Windows would have to fill his position while he was on leave, and that his current position might not be available upon his return. [Filing No. 66 at 18 in *Conley I*.] | Ms. Wright advised Mr. Conley that his position would have to be filled while he was on leave, and that his position might not be available upon his return. [Filing No. 1 at 5.] |
| Upon taking his leave, Mr. Conley advised Ms. Wright that he was not resigning. [Filing No. 66 at 18 in *Conley I*.] | Upon taking his leave, Mr. Conley advised Ms. Wright and Mr. Woodward that he was not resigning. [Filing No. 1 at 5.] |
| Ms. Wright left Mr. Conley a voicemail on October 25, 2018 in which she advised him that his employment was being terminated, but he did not receive the voicemail and did not learn of his termination until he emailed Ms. Wright on November 19, 2018 regarding his return to work. [Filing No. 66 at 18 in *Conley I*.] | Ms. Wright contends that she left Mr. Conley a voicemail on October 25, 2018 advising him of his termination, but he did not learn of his termination until November 20, 2018, when he attempted to return to work. [Filing No. 1 at 6.] |

So, while Mr. Conley asserts different claims in *Conley I* and *Conley II*, his claims in *Conley II* are based on many of the same transactions and occurrences which underlie *Conley I*.

- 11 -

Further, there is no dispute that Mr. Conley and Windows are involved in both *Conley I* and *Conley II*. In short, this is a classic example of impermissible claim splitting. *See Palka*, 662 F.3d at 437. Accordingly, the Court **GRANTS** Windows' Motion to Dismiss, [[Filing No. 11]], based on the doctrine of claim splitting.[4]

**IV.**
**CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Windows' Motion to Dismiss, [11], and **DISMISSES** Mr. Conley's claims against Windows **WITH PREJUDICE**.[5] No partial final judgment shall enter at this time.


Date: 6/3/2021

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana


**Distribution via ECF only to all counsel of record**

---

[4] The Court need not discuss Windows' additional argument that this case should be dismissed "for reasons of wise judicial administration." [[Filing No. 12 at 11].] The Court also need not address the parties' difference of opinion regarding whether a final judgment in *Conley I* is needed for the doctrine of res judicata to apply, although it notes that final judgment in *Conley I* was entered after the pending motion was fully briefed, [[Filing No. 72] in *Conley I*], making that issue moot in any event.

[5] Because Mr. Conley cannot amend his Complaint to remedy the fact that he engaged in improper claim splitting, dismissal with prejudice is appropriate. *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) (dismissal with prejudice is proper "if it is clear that any amendment would be futile").